UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

PWV CONSULTANTS LLC,

       Plaintiff,

   -v-                            No.  20-CV-9030-LTS-JW

CHEBIL REALTY LLC, and
ERIC CHEBIL,

       Defendants.

------------------------------------------------------x


<u>MEMORANDUM ORDER</u>

      In this case, Plaintiff PWV Consultants, LLC ("PWV" or "Plaintiff") brings six causes of action against Chebil Realty LLC ("Chebil Realty") and Eric Chebil ("Mr. Chebil" and, together "Defendants").  The six claims relate to Chebil Realty's alleged failure to pay PWV for technology and design services pursuant to a written Services Agreement and Mr. Chebil's personal guarantee of that payment obligation.  (See docket entry no. 1 (the "Complaint" or "Compl.").)  The Court has jurisdiction of this diversity action pursuant to 28 U.S.C. § 1332(a).

      This case is before the Court on PWV's Motion for Default Judgment Against Chebil Realty LLC pursuant to Federal Rule of Civil Procedure 55(b)(2).[1]  (Docket entry no. 98

---

[1]    The Motion is also styled as a Motion for Summary Judgment as to Defendant Eric Chebil.  (See docket entry no. 98 (the "Motion").)  That Motion for Summary Judgment, as well as the previously filed Motion for Partial Summary Judgment as to Mr. Chebil (docket entry no. 58), cannot be decided at this juncture because the case is stayed against Mr. Chebil during the pendency of his personal bankruptcy proceedings absent relief

(the "Motion").)  The Court has carefully considered PWV's submissions in connection with the instant motion.  For the following reasons, PWV's unopposed motion for default judgment is granted, and PWV is awarded damages in the amount of $332,505.00, contractual pre-judgment interest in the amount of $225,746.96, attorneys' fees and costs in the amount of $73,589.42, and post-judgment interest at the federal statutory rate.

BACKGROUND

Factual Background

The following recitation of facts is drawn from the Complaint, as well as from the uncontroverted documentary evidence filed in support of the instant motion practice.  In light of Chebil Realty's failure to retain new counsel and the Court's subsequent order permitting PWV to make a motion for a default judgment (docket entry no. 92), the well-pleaded factual allegations contained therein are deemed admitted because it is "appropriate for a court to strike the answer and counterclaims" of a "corporate defendant for failing to appear by counsel."  Next Proteins, Inc. v. Distinct Beverages, Inc., No. 09-CV-4534-DRH-ETB, 2012 WL 314871, at *2 (E.D.N.Y. Feb. 1, 2012) (collecting cases).  In other words, "[a] default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true."  Joseph v. HDMJ Rest., Inc., 970 F. Supp. 2d 131, 141 (E.D.N.Y. 2013) (finding default where corporate defendant failed to appear by counsel).

PWV is a New York-based boutique consulting firm.  (Compl. ¶ 2.)  Eric Chebil is an entrepreneur and the sole principal of Chebil Realty, an app-based real estate business in California.  (See id.)  On December 10, 2018, PWV and Chebil Realty signed a contract (docket

---

from the automatic stay (see docket entry no. 109).  Therefore, the Court only evaluates the Motion as to Chebil Realty at this time.

entry no. 101-5 (the "Services Agreement")) in which PWV agreed to provide Chebil Realty with software engineering services at a rate of $175 per hour.  (Compl. ¶ 17; see also Services Agreement at 2.)  These services were to include "head[ing] the development of the Chebil Realty mobile and web applications," and "providing digital security measures at the direction of" Chebil Realty LLC.  (Compl. ¶ 16.)  The Services Agreement further provided that payment was due within "5 business days of receipt" (Services Agreement ¶ 1(c)), that interest accrued on late payments at the rate of "10% per month or the maximum allowed by law . . . beginning 14 days after the agreed upon payment terms" (id. ¶ 15); and, that in an action to collect, "the prevailing party [is] entitled to recover costs and attorney's fees" (id. ¶ 22).[2]

From December 2018 through September 2019, pursuant to the Services Agreement, PWV "performed services, delivered work product, and created intellectual property" including: iOS and Android applications; web apps; APIs; development and stage environments; designs and associated materials created by and/or provided to Chebil Realty by PWV (including Invision design access); screenshots and screen captures; documents; presentations; slide shows; decks; web materials; promotional materials (including printed materials); video or other recordings (including Invision-based or app walkthroughs); materials bearing PWV's name and logos and/or the name and likeness of PWV principal Pieter Van Iperen; code; images; wireframes; design/development documents; flowcharts; logic trees; and access to any accounts associated with the foregoing materials.  (Compl. ¶¶ 22-23.)  For these

---

[2]     On March 22, 2019, Defendant Eric Chebil executed a Personal Guarantee under which he "personally guarantee[d] the prompt, full and complete performance of any and all existing duties and obligation of the Debtor [Chebil Realty, LLC] to the Lender [PWV Consultants LLC]," and "the payment of any and all indebtedness due to the Lender by the Debtor, under the terms of the" Services Agreement.  (Docket entry no. 101-6 (the "Personal Guarantee").)

services, PWV sent Chebil Realty twenty-nine detailed, contemporaneous invoices totaling $399,100.00.  (Docket entry no. 101-11 (the "Invoices"); see also Compl. ¶ 24.)  Between December 2018 and February 2019, Chebil Realty paid a total of $66,595.00.  (Compl. ¶ 26.)

Procedural History

        PWV filed its Complaint on October 28, 2020.  O'Brien LLP appeared as counsel for both Chebil Realty and Mr. Chebil.  (See docket entry no. 9.)  Defendants made, then withdrew, a motion to dismiss (see docket entry no. 16) before filing an Answer in February 2021 (docket entry no. 18 (the "Answer")).  In the Answer, Chebil Realty asserted a counterclaim alleging that PWV "breached the [Services] Agreement" by failing to "develop and provide Chebil Realty with an App . . . ."  (Id. at Counterclaim ¶ 14.)

        Discovery and related motion practice proceeded from March 2021 through April 2022.  In June 2022, PWV moved for (1) partial summary judgment against Mr. Chebil in the amount of $73,026.25; and (2) summary judgment dismissing Chebil Realty's counterclaim on the merits.  (Docket entry no. 58 (the "Motion for Summary Judgment"); see also docket entry no. 61.)  While the Motion for Summary Judgment was pending, on September 23, 2022, O'Brien LLP moved to withdraw as Defendants' counsel on the grounds that they had not been paid in a year and that Defendants had instructed them to cease work.  (See docket entries no. 75 (the "Motion to Withdraw"), 77.)

        On October 18, 2022, Magistrate Judge Willis granted O'Brien LLP's motion for leave to withdraw.  (Docket entry no. 82.)  The Court ordered Mr. Chebil to appear pro se and ordered Chebil Realty to retain new counsel.  (Id. at 4.)  Mr. Chebil appeared pro se on November 23, 2022 (docket entry no. 91), but Chebil Realty failed to retain new counsel (see docket entry no. 92).  PWV then sought and obtained leave, under Rule 2(d) of the Court's

Individual Practices, to seek default judgment against Chebil Realty.  (See id.)  The Clerk of Court issued a certificate of default against Chebil Realty on December 1, 2022.  (Docket entry no. 96.)

PWV filed the instant Motion on January 13, 2023, requesting a default judgment against Chebil Realty pursuant to Federal Rule of Civil Procedure 55, and summary judgment against Mr. Chebil pursuant to Federal Rule of Civil Procedure 56.  Mr. Chebil requested, and was granted, an extension to respond to the motion for summary judgment until March 9, 2023.  (See docket entry no. 107.)  However, no opposition to the motion for summary judgment was filed before the deadline.  Shortly after the deadline elapsed, on March 16, 2023, the Court was informed that Mr. Chebil had voluntarily filed a Chapter 7 bankruptcy petition on March 9, 2023.  (Docket entry no. 108.)  In light of the automatic stay provisions of 11 U.S.C. section 362, the Court stayed the proceedings in this action as to Mr. Chebil pending his bankruptcy case.  (Docket entry no. 109.)  Chebil Realty has not responded to the default judgment motion.

<u>DISCUSSION</u>

Default Judgment

Federal Rule of Civil Procedure 55 provides that that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend," and after entry of default, a default judgment may be entered against such person.  Fed R. Civ. P. 55(a), (b)(2).  In determining whether to grant a motion for default judgment, the Court considers three factors: "(1) whether the defendant's default was willful; (2) whether [the] defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment."  <u>Santana v. Latino</u>

Express Rests., Inc., 198 F. Supp. 3d 285, 291 (S.D.N.Y. 2016) (citation omitted); see also

Guggenheim Cap., LLC v. Birnbaum, 722 F.3d 444, 455 (2d Cir. 2013) (applying these factors

in review of lower court grant of a default judgment).

       Here, the Court finds that all three factors weigh in PWV's favor.  First, Chebil

Realty's failure to retain counsel warrants a finding of default, in that "a corporation's failure to

retain counsel results in a failure to 'otherwise defend.'"  Glob. Auto, Inc. v. Hitrinov, No. 13-

CV-2479-SLT-RER, 2015 WL 5793383, at *7 (E.D.N.Y. Sept. 30, 2015).  Likewise, Chebil

Realty's "failure to respond to the default judgment motion practice [is] indicative of willful

conduct."  Bldg. Serv. 32BJ Pension Fund v. 1180 AOA Member LLC, No. 18-CV-12226-LTS-

OTW, 2020 WL 70947, at *2 (S.D.N.Y. Jan. 3, 2020).  Second, because Chebil Realty failed to

respond to this Motion, the Court is unaware of any meritorious defense that Chebil Realty could

present.  Third, PWV will be prejudiced and left with no alternative recourse if it is denied

judgment by default because Chebil Realty has willfully failed to retain counsel as required by

court order.  (See docket entry no. 86.)

Chebil Realty's Counterclaim

       "In entering default judgment against a corporate defendant for failing to appear

by counsel, it is also appropriate for a court to strike the answer and counterclaims of that

defendant."  Next Proteins, Inc., 2012 WL 314871, at *2 (collecting cases).  Chebil Realty

asserted a counterclaim alleging that PWV "breached the [Services] Agreement" by failing to

"develop and provide Chebil Realty with an App . . . ."  (Answer at Counterclaim ¶ 14.)  Because

Chebil Realty is in default for its failure to appear by counsel, its answer and its counterclaim are stricken.[3]

Breach of Contract[4]

      The Court must next "decide whether the plaintiff has pleaded facts supported by evidence sufficient to establish the defendant's liability with respect to each cause of action asserted." Santana, 198 F. Supp. 3d at 291.  That is, "[a] default judgment entered on the well-pleaded allegations in the complaint establishes a defendant's liability."  Joseph, 970 F. Supp. 2d at 141.  Where the Court finds that the facts and evidence sufficiently establish liability on a motion to default, it "must go on to 'determine the appropriate amount of damages, which involves two tasks: determining the proper rule for calculating damages on such a claim, and assessing plaintiff's evidence supporting the damages to be determined under this rule.'" Santana, 198 F. Supp. 3d at 291 (quoting Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)).

      "The elements of a breach of contract claim in New York are '(1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by

---

[3]     The Court need not reach PWV's further argument that such counterclaims must be dismissed for failure to prosecute under Federal Rule of Civil Procedure 41(b).

[4]     PWV only seeks default judgment against Chebil Realty on PWV's claim for breach of the Services Agreement.  (See docket entry no. 100 ("Pl. Mem.") at 3.)  In addition to PWV's contract claim, the Complaint pleads claims against both Defendants for quantum meruit, (Compl. ¶¶ 41-52), unjust enrichment, (id. ¶¶ 53-56), and declaratory judgment of title to the intellectual property PWV created under the Services Agreement, (id. ¶¶ 57-61); the Complaint further requests an injunction against both Defendants' continued use of that intellectual property, (id. ¶¶ 62-65).  "While PWV respectfully reserves the right to assert all of its claims at trial, it consents to dismissal of unresolved claims (and entry of final judgment pursuant to Fed. R. Civ. P. 58) should the Court grant this Motion in full."  (Pl. Mem. 3 n. 3.)

the defendant; and (4) damages.'" <u>N. Am. Photon Infotech Ltd. v. ZoomInfo LLC</u>, No. 20-CV-2180-JPC, 2021 WL 4482208, at *4 (S.D.N.Y. Sept. 30, 2021) (quoting <u>Swan Media Grp. v. Staub</u>, 841 F. Supp. 2d 804, 807 (S.D.N.Y. 2012)); <u>see also</u> <u>Orlander v. Staples, Inc.</u>, 802 F.3d 289, 294 (2d Cir. 2015). PWV has satisfied each of the four elements.

      <u>First</u>, the Complaint alleges—and the Answer admits—that PWV and Chebil Realty executed the Services Agreement on or about December 10, 2018. (Compl. ¶ 15; Answer ¶ 4; <u>see also</u> Services Agreement.) This is enough to satisfy the first element.

      <u>Second</u>, PWV has alleged sufficient facts to demonstrate its adequate performance under the agreement. The Complaint alleges that, from December 2018 through September 2019, PWV "performed services, delivered work product, and created intellectual property" pursuant to the Services Agreement. (Compl. ¶¶ 22-23.) These factual allegations of services performed are further bolstered by the twenty-nine detailed, contemporaneous Invoices that PWV sent Chebil Realty. (<u>See</u> Invoices.)

      <u>Third</u>, PWV has adequately alleged that Chebil Realty breached the Services Agreement. That is, the Complaint alleges that Chebil Realty only paid PWV a total of $66,595.00 (Compl. ¶ 26), while the Invoices indicate that $399,100.00 was due under the Services Agreement (<u>see</u> <u>id.</u> ¶ 24). The Invoices reflect the Service Agreement's provision that PWV agreed to provide Chebil Realty with software engineering services at a rate of $175 per hour. (<u>See</u> <u>id.</u> ¶ 17; <u>see also</u> Services Agreement at 2.)

      <u>Fourth</u>, and as discussed in more detail below, PWV seeks damages in the form of (1) "[t]he amount owed and unpaid by Defendant Chebil Realty to Plaintiff for services rendered" (Compl. ¶ 27), (2) interest and late fees under Paragraph 15 of the Services Agreement

(id. ¶ 28), and (3) PWV's "reasonable costs of collection, including legal fees" (see Pl. Mem. at 12-13).

In sum, "plaintiff has pleaded facts supported by evidence sufficient to establish the defendant's liability with respect to [the] cause of action asserted." Santana, 198 F. Supp. 3d at 291.  Next, the Court "must go on to 'determine the appropriate amount of damages.'" Id. (quoting Alcantara, 183 F.3d at 155).

Damages

Under New York law, the general measure of damages in a breach of contract case is expectation interest damages, which includes the total amount due under the contract. See, e.g., Constellation Newenergy, Inc. v. Om Vegetable, Inc., No. 22-CV-3766-LJL, 2022 WL 3334707, at *4 (S.D.N.Y. Aug. 12, 2022).  PWV asserts that it is entitled under the contract to three kinds of damages: (1) the unpaid invoices in the amount of $332,505.00, (2) contractual interest in the amount of $192,274.35, and (3) reasonable attorneys' fees in the amount of $73,589.42.

First, as to the unpaid invoices, PWV asserts that it is entitled to $332,505.00 under the terms of the Services Agreement.  (Pl. Mem. 10.)  In support of this assertion, PWV's counsel submitted copies of the twenty-nine Invoices that PWV submitted to Chebil Realty, which lists the total amount due to PWV—for services performed at a rate of $175 per hour—as $399,100.00.  (See Invoices.)  PWV further emphasizes that Mr. Chebil confirmed, during his deposition, that Chebil Realty received each invoice by email on or about the date it was issued.  (See docket entry no. 101-8 at 187:10-25.).  Under the Paragraph 1(c) of the Services Agreement, Chebil Realty was obliged to pay the invoices submitted to it within 5 business days of the date that the invoice was received.  Plaintiff has submitted a Summary Table,

accompanied by a sworn declaration affirming its accuracy under penalty of perjury, indicating that Chebil Realty paid only $66,595.00 toward the Invoices.  (See docket entry no. 101-12 (the "Summary Table"); see also Mullen Decl. ¶ 14(e).)  This evidence is sufficient to establish that PWV is owed $332,505.00 in unpaid invoices as damages for Chebil Realty's breach of the Services Agreement.

       Second, as to contractual interest, PWV seeks $192,274.35 under the terms of the Services Agreement based on a "conservative methodology" of calculation.  (Pl. Mem. 11.)  That is, Paragraph 15 of the Services Agreement provides that unpaid invoices accrue interest at the "maximum [rate] allowed by law and will begin accruing 14 days after the agreed-upon payment terms outlined in Paragraph 1[,]" and Paragraph 1(c) requires payment "within 5 business days of receipt."  Paragraph 22 of the Services Agreement further provides that New York law governs the Services Agreement; the maximum interest rate under New York law is sixteen percent per year.  N.Y. Gen. Oblig. Law § 5-501; N.Y. Banking Law § 14-a(1); see Llewellyn v. Asset Acceptance, LLC, No. 14-cv-411-NSR, 2015 WL 6503893, at *8 (S.D.N.Y. Oct. 26, 2015) ("Section 14-a of the N.Y. Banking Law sets the maximum rate of interest under N.Y. Gen. Oblig. Law § 5-501 at sixteen percent per year.")

       In the Summary Table, accompanied by a sworn declaration affirming its accuracy under penalty of perjury, PWV calculated simple interest at a rate of sixteen percent annually for each of the past due invoices.  (See Summary Table; see also Mullen Decl. ¶ 14(g).)  The Court has confirmed that these calculations establish that PWV was owed $192,274.35 in contractual interest on unpaid invoices as damages for Chebil Realty's breach of the Services Agreement as of January 12, 2023—the date that PWV filed its Motion.  Extending that calculation methodology to the date of this Memorandum Opinion and Order, the Court finds

that PWV is owed a total of $225,746.96 in contractual interest as of the date of this Memorandum Order.

Third, as to attorney's fees, "PWV seeks to recover the actual and reasonable amount it paid to its counsel to prosecute this action through and including July 1, 2022: $73,589.42" pursuant to Paragraph 22 of the Services Agreement, which provides for recovery of "reasonable costs of collection, including legal fees." (Pl. Mem. 12.) It is well-established that "parties may agree by contract to permit recovery of attorneys' fees, and a federal court will enforce contractual rights to attorneys' fees. . . ." McGuire v. Russell Miller, Inc., 1 F.3d 1306, 1313 (2d Cir. 1993). A "presumptively reasonable fee" is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011). "The burden is on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed." Hugee v. Kimso Apartments, LLC, 852 F. Supp. 2d 281, 298 (E.D.N.Y. 2012).

To support its request for attorneys' fees, Plaintiffs submitted copies of paid legal invoices with detailed and contemporaneous time entries. (Docket entries no. 101-13 (the "Legal Invoices"), 101-14.) The sworn declaration accompanying the Legal Invoices indicates that "[a]ll of the services and expenses . . . invoiced . . . were necessarily and reasonably incurred in the prosecution of this action for repayment of amounts due under the Services Agreement[,]" and "[t]he invoices reflect customary discounts that Mullen P.C. affords its clients." (Mullen Decl. ¶ 16.) A review of the Legal Invoices indicates that fewer than 150 hours of work in total were performed, at a rate of less than $500 per hour.

The Court concludes that the legal fees that PWV actually paid were reasonable in light of the hours worked and the rates claimed. PWV initiated this case in 2020; in the years

since, Mullen P.C. has shepherded this case through discovery, a motion for partial summary judgment, and the instant motion for default.  The number of hours billed is commensurate with the activity in this case; this conclusion is further bolstered by the fact that PWV only seeks legal fees through July 1, 2022.  (Pl. Mem. 12.)  Second, Mullen P.C. charged less than $500 an hour—lower than rates considered reasonable to prosecute a breach of contract action in this District.  See, e.g., CBF Industria de Gusa S/A v. AMCI Holdings, Inc., 342 F.R.D. 84, 89 (S.D.N.Y. 2022) (collecting cases).  Therefore, the Court grants PWV's request for $73,589.42 in attorneys' fees.

CONCLUSION

For the foregoing reasons, the Court hereby grants PWV's unopposed Motion for Default Judgment against Chebil Realty and awards PWV damages in the amount of $332,505.00, contractual interest in the amount of $225,746.96, attorneys' fees and costs in the amount of $73,589.42, for a total of $631,841.38, and post-judgment interest at the federal statutory rate.

This Memorandum Order and Opinion moots docket entry no. 58 and resolves docket entry no. 98 as to Defendant Chebil Realty.  There being no just reason for delay of the entry of judgment against Chebil Realty, the Clerk of Court is respectfully requested to enter judgment accordingly pursuant to Federal Rule of Civil Procedure 54(b), dismiss the Counterclaim that Chebil Realty asserted against PWV (docket entry no. 18), and terminate this case as to Chebil Realty only.  Because the case remains stayed against the sole remaining Defendant, Mr. Chebil, the Clerk of Court is respectfully directed to terminate docket entries no.

58 and 98 without prejudice to renewal against Mr. Chebil in the event the bankruptcy stay is

lifted or terminated.  This case remains referred to Judge Willis for general pretrial management.


      SO ORDERED.

Dated: New York, New York
      August 28, 2023


          /s/ Laura Taylor Swain

          LAURA TAYLOR SWAIN
          Chief United States District Judge